IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHELLE E. LYONS,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        CIVIL ACTION NO.
                                      )
NORMAN MINETA, Secretary of           )        01-AR-2715-S
Transportation                       )
                                      )
        Defendant.                    )
                                      )
                                      )
                                      )

**MEMORANDUM OPINION**

Before the court is a motion for summary judgment filed by
defendant, Norman Mineta ("Mineta"), Secretary of Transportation.
Plaintiff, Michelle E. Lyons ("Lyons"), a black female, alleges
that her employer Mineta discriminated against her in violation
of Title VII and that Mineta also retaliated against her after
she engaged in protected activities, *i.e.,* the filing of
discrimination complaints with Equal Employment Opportunity
("EEO") counselors.

Lyons' complaint strangely purports to include five
fictitious defendants, none of whom are thereafter given more
particular description or who are alleged to have done anything
wrong.  Just as strangely, the complaint refers to appended
"claims based upon AL law," without anywhere attempting to state
a claim based on Alabama law.  Not as strange, but nevertheless

1

unusual, the complaint makes clear that Lyons is complaining

about discrimination against her as a result of her membership in

a discrete, protected sub-group comprised of "black females."   In

this regard, the complaint alleges:

> Defendant followed and is following a policy and
> practice of discrimination against the Plaintiff
> **because of Plaintiff's Sex & Race . . .**

* * *

> Employing supervisory discretion in a discriminatory
> manner against Plaintiff **because of her Sex & Race. . .**

* * *

> Failing to take corrective action from mistreatment of
> the Plaintiff when such treatment occurred **because she
> was a Black Female.**

* * *

> The effect of the policies and the practices pursued by
> the Defendant as alleged above has been and continues
> to limit, classify, and discriminate against the
> Plaintiff in ways which jeopardize her potential of
> securing a job and deprive her of employment
> opportunities and otherwise adversely affect her status
> as an employee **because of her Sex & Race . . .**

* * *

> . . . Plaintiff has been and is being deprived of
> income in the form of wages and prospective retirement
> benefits, social security and other benefits due to her
> as a potential employee **solely because of her Sex &
> Race. . .**

* * *

> . . . otherwise discriminating against the Plaintiff **on
> the basis of her Sex & Race.**

(emphasis supplied).

2

Nowhere in her complaint does Lyons attempt to assert **alternative**
claims of disparate treatment based on her sex **or** her race.  Her
tag-along, enigmatic claim of "hostile work environment"
necessarily means that she claims that Mineta provided her a
workplace that harasses **black females**, as contrasted to white
females, or black males, or females, or males, or blacks, or
whites.  Plaintiff's claims of a simultaneous dual proscribed
motivation are conspicuously always stated in the conjunctive and
never in the disjunctive.  The motion for summary judgment is due
to be granted.

### Statement of Undisputed Pertinent Facts

Lyons has been continuously employed by the Federal Aviation
Administration ("FAA") since 1987. She is currently employed as a
FG-12 Airway Transportation System Specialist ("ATSS") at the
Birmingham International Airport, Birmingham System Support
Center in the Airways Facilities ("AF") division. The AF division
is responsible for maintaining the communication, radar and
navigational equipment for the National Airspace System (NAS).
ATSS technicians, like Lyons, must be certified on NAS related
equipment or operating systems.

When an ATSS is not certified, the ATSS must work with a
certified technician when performing work on NAS equipment or
systems. There are three steps to becoming certified. First, the
technician must take course work about a piece of equipment or

3

system. Second, the technician receives on-the-job training ("OJT") for the equipment or system from a certified technician. The third step is for the technician to take a certification examination on the equipment or system.  Certifications are what make technicians eligible for promotions and merit increases. Certifications play a significant role in scheduling work shifts and assigning technicians for OJT of developmental technicians.

Beginning in the summer of 1999, Lyons' supervisors began to experience problems with Lyons' performance. She failed to log required entries into maintenance logs for NAS related equipment; she allowed some equipment to go out of service; she failed to maintain proficiency on systems for which she had been certified. Additionally, she was combative during training sessions and insubordinate with management. In July of 1999, Lyons was notified that she would undergo OJT for the Cardion DME system. Mike Gholston ("Gholston"), a black male, was assigned to provide her OJT. She was assigned 10 hours of OJT in preparation for a 5 hour certification exam; the OJT was to be completed in 45 days but it could be extended if that deadline was not met.

After completing 5 hours of training, Lyons complained about training with Gholston because of EEO concerns and Gholston's unavailability. A new OJT instructor, Chris Street ("Street), was assigned. Lyons also complained about Street. She thought he was biased and not available to provide OJT. Street provided her with

4

10.5 hours of OJT. Thus, she received a total 15.5 hours of OJT. Lyons took the certification exam and failed. She claimed racial discrimination in the selection of OJT trainers, amount of time afforded for the system and requiring her to take the certification exam despite her alleged difficulties with OJT.

In October of 1999, all of Lyons' certifications were revoked. The reason asserted by her employer was poor performance. Failing the certification exam combined with Lyons' other difficulties with performance led to her being placed on an Opportunity to Demonstrate Performance ("ODP"). The ODP set forth criteria Lyons needed to meet and a training plan to accomplish the goals and demonstrate she could perform her current job. Pursuant to the ODP, Lyons became re-certified on MALSR equipment; however, in February 2000, she failed the written RVR certification exam. During the time of her ODP, Lyons was removed from any responsibility for equipment and systems and was tasked essentially with nothing more than studying and otherwise preparing for re-certification.

In July of 1999, Lyons requested to attend a training course in Oklahoma City in place of another SSC ATSS, Leyshun Bandy ("Bandy"), a black female, who was approved to attend but had to cancel at the last minute. Lyons request was denied. Must a black female who cancels be replaced with a back female? Lyons claims her request was denied because she is black. William Turner, the

5

SCC Manager for the FAA at the Birmingham Airport, claims that Lyons had been sent to the training in Oklahoma in the past but had not taken the next step and received OJT, let alone become certified on the equipment or systems she received training on in Oklahoma City. Turner wanted Lyons to get more current in her OJT and certifications on training she had already received before she added more training.

In 2000, the FAA converted from the GS pay scale to pay band as part of personnel reform in the FAA referred to as core compensation. Prior to the conversion, most employees were given a within grade increase to the next step. Upon conversion most employees were given a within grade buy-out. During the conversion, Lyons was mistakenly coded as an eligible employee for the within grade increase and buy out. Accordingly, she was given the two increases. In July of 2000, it was discovered that she was not, in fact, eligible for the two increases and should not have had her base pay increased. Lyons was notified of this error and told that the increases would be pulled back. Because her performance did not meet expectations she was not eligible for increases. This was pursuant to the PASS CBA and FAA regulations dealing with core compensation.  Lyons complained about this and amended her complaint to add a claim of retaliation.

In June of 2001, pursuant to FAA practice, Lyons was given a

6

mid-term review of her performance. Her performance was rated as
"does not meet expectations." This rating was based on Lyons
inability to complete her ODP and her failure to regain any of
her certifications since February of 2000. For the entire year of
2000, Lyons was rated "does not meet expectations." In view of
her poor performance and no change from the previous year's
performance, Lyons had the same rating.

<u>**Analysis**</u>

Title VII makes it unlawful for a federal employer to
discriminate against an employee with respect to personnel
actions based on race, color, religion, sex, or national origin
or any combination thereof, as here. 42 U.S.C. § 2000e-16(a). In
other words, "black females" constitute a protected group, but a
plaintiff who complains of such intersectional discrimination
must prove it.  Where direct evidence of discrimination is
unavailable the courts review a Title VII plaintiff's claim using
the familiar *McDonnell Douglass/Burdine* three-step burden
shifting framework. Under this framework, the plaintiff has the
initial burden of establishing a prima facie case of mixed
gender-racial discrimination. *McDonnell Douglas Corp. v. Green,*
411 U.S. 792, 802 (1973). If a prima facie case has been shown,
the defendant must articulate some legitimate, non-discriminatory
reason for the adverse employment action. *Id.* at 802. If this is
accomplished, the plaintiff may attempt to demonstrate that the

7

proffered reason is in fact merely a pretext for the defendant's
proscribed conduct. To establish a prima facie case of disparate
treatment the plaintiff must show that (1) she belongs to a
protected class; and (2) she was similarly situated to a person
who was not a member of the protected class; but (3) she did not
receive a condition of employment provided to that person.
*Thompson v. Morris Brown College,* 752 F.2d 558, 562 n.7 (11th
Cir. 1985).

The question of whether this plaintiff is similarly situated
to employees who are either white or male is crucial. *Marshall v.
Western Grain Co.,* 838 F.2d 1165, 1168 (11th Cir. 1988). To
establish a prima facie case of race or sex discrimination,
plaintiff must show that she experienced the actions complained
of while whites and/or male employees did not. If plaintiff fails
to identify similarly situated, non-minority employees who were
treated more favorably, her case must fail because the burden is
on her to establish her prima facie case. *Jones v. Bessemer
Carraway Medical Center, i137 F.3d 1306, 1311 (11th Cir. 1998),
op. superceded in part on reh'g,* 151 F.3d 1321 (11th Cir. 1998).
Negative performance evaluations, standing alone, do not
constitute adverse employment action sufficient to satisfy the
second element of a prima facie case of retaliation under the
discrimination laws. *See Lucas v. Grainger,* 257 F.3d 1249 (11th
Cir. 2001).

8

Mineta claims that Lyons not only fails to make a prima facie case of sex and race discrimination with regard to her training but she fails to present evidence of pretext. Lyons maintains that she was discriminated against with regard to the training that she received. Her complaint alleges racial and sex discrimination in selection of her OJT trainers, in the amount of OJT time afforded for the system, and in requiring her to take the certification exam despite her alleged difficulties with OJT. Lyons was provided with two different OJT trainers. Furthermore, Mineta had a legitimate non-discriminatory reasons for all of management's actions involving Lyons' training. Her first trainer, Gholston, a black male, was certified and trained to conduct OJT. He provided Lyons with 5 hours of training. Lyons was given a new trainer after she complained about Gholston. Her new trainer was also properly certified and trained to conduct OJT. He provided her with 10.5 hours of training. Again, Lyons complained. Lyons received 15.5 hours of training, 5.5. extra hours of training. Lyons was still unable to obtain a passing grade on her certification exam. She does not complain that the exam was designed to disparately impact upon black females.

Lyons alleges that she was not allowed to attend a class in Oklahoma City to prepare her for future advancements. Mineta articulates as a legitimate reasons for denying Lyons' request that she had not completed OJT and the required certification

exam on three formal equipment courses she had previously attended.

Lyons claims that there are similarly situated employees who are white or male who were treated more favorably than she. In her reply brief, Lyons simply lists the names of these individuals and refers to the allegations contained in her EEO Report of Investigation which does not even appear to be attached as an exhibit. Lyons also offers as proof of discrimination the contention that Turner stated that it is a policy to allow twice the time allotted for completing the certification exam as the time allowed for OJT, but some other individuals and a PASS representative say that there is no such policy. According to Lyons "this shows disparate treatment by the defendant because of the 'switch and bait' tactic of Turner stating there are such time deadlines, even quoting a non-existent PASS contract, and when Confronted . . .backpedals by making . . . Admissions . . ." Lyons also has a letter from a PASS representative stating that it is his opinion that other individuals received treatment more favorable than Lyons received. This is not sufficient evidence to raise a genuine dispute of material fact that she was discriminated against. Furthermore, Lyons has failed to produce any evidence that raises a genuine dispute of material fact as to Mineta's legitimate non-discriminatory business reasons.

Title VII makes it unlawful for an employer to take

retaliatory action against an employee for engaging in
statutorily protected activities. 42 U.S.C. 2000(e)-3(a). To
successfully make out a prima facie retaliation claim under Title
VII, a plaintiff must show that (1) the plaintiff engaged in
statutorily protected activity, (2) the plaintiff suffered an
adverse employment action, and (3) the adverse employment action
was casually related to the protected expression. *Gupta v. Fla.
Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

On October 12, 1999, Lyons filed a formal complaint of
discrimination. It is not disputed that this was protected
activity. However, Mineta argues that Lyons has failed to
demonstrate that she was subjected to an adverse action and that
there was a casual connection between her protected activity and
the alleged adverse action taken. Lyons claims that she was
subjected to retaliation by way of a downward salary adjustment
for filing an EEO claim. As indicated above, the agency went
through a personnel reform during 2000. During this time,
employees who were meeting expectations were given a within grade
pay increase and buy-out. Lyons had a "does not meet
expectations" rating. However, she was mistakenly coded as an
eligible employee for the increase and buy-out and given the two
increases. When it was discovered that she was not eligible steps
were taken to correct her pay.

Mineta also claims he had a legitimate non-discriminatory

11

reason for his actions. Since early 2000, Lyons has not held any certifications and is not allowed to perform the duties for which she was hired. Therefore, the reduction in salary would be appropriate based on Lyons inability to perform her job. Lyons states that her inability to do the job is that she has not been allowed to be properly trained and tested on the equipment. Lyons attempts to prove pretext by pointing to the fact that Turner stated that her end-of-the-year appraisal **will** be another "does not meet expectations." According to Lyons, this shows that Turner pre-judged Lyons ahead of time and was going to condemn her appraisal due to her filing the EEO complaint and its amendments. Lyons was not performing at an appropriate level during the time in question. Her rating was based upon her inability to complete her ODP and her failure to regain any of her certifications. Lyons merely makes conclusory allegations. She offers no evidence to support these allegations except her own argumentative affidavit. She has failed to raise a genuine dispute of material fact.

A federal employee is required to pursue and exhaust his administrative remedies as a jurisdictional prerequisite to filing a Title VII action. 42 U.S.C. 2000e-16(c). Mineta argues that Lyons' allegations of hostile work environment and refusal to offer her a job for which she claims she was qualified should be dismissed because she failed to exhaust her administrative

remedies. According to Mineta, Lyons administrative complaint was limited to the training issue under Title VII violation on the basis of race and sex. It was later amended to include two counts of reprisal. One count involves Lyons pay and the other count involves her performance evaluation. Mineta argues that neither the original administrative complaint nor any amendments includes any allegation of a hostile work environment or failure to offer Lyons a particular job as she now complains in her judicial complaint.

> In response Lyons states:
>
> Is it Plaintiff's fault that her Beleagured and Besieged Attorney Reiterated her Amended Complaints to the proper authorities and that, Unseemingly and Incongruously, her Attorney's Poor Efforts of such are not reflected anywhere in the Silly and Spurious and Contemptible EEO Report of Investigation—all three Volumes??!!??
>
> No Way, Jose!!!!!!!.

There appears to be several requests by Lyons and her attorney to amend the EEO complaint to include hostile work environment and refusal to offer her a job for which she was qualified. Lyons also offers into evidence part of her complaint that reference these allegations with dates handwritten in by her attorney making it is difficult to determine if Lyons properly exhausted her administrative remedies. However, Mineta correctly points out that regardless of her administrative claims history, Lyons has not shown that Mineta's actions were pretext and not legitimate.

13

To defeat summary judgment a party must set for specific facts through affidavits or other material showing that there is a genuine issue for trial. This requires a showing of competent material reflecting admissible information that can be produced at trial and qualify as substantial evidence. A party cannot rest on mere allegations of the complaint to defeat summary judgment. The nonmovant must also be able to articulate a legal argument precluding summary judgment on the record before the court. Lyons has failed to raise a genuine dispute of material fact or articulate any legal argument precluding summary judgment. Mineta is entitled to judgment as a matter of law.

### Conclusion

This court, by separate order, will grant Mineta's motion for summary judgment.

DONE this ___22nd___ day of October, 2002.

WILLIAM M. ACKER, Jr.
UNITED STATES DISTRICT JUDGE

14